Is that Mr. Dale? Yes, Your Honor. My name is Ivan Dale, on behalf of the United States, who is the appellant and cross-appellee. If at all possible, I would like to reserve approximately seven minutes. If you try to watch your time, it's ultimately up to you, but I'll try to pop up, although sometimes you'll have my colleagues or I in a heated question and a change, and probably best just to keep going then. I appreciate it. So this is a suit against the United States for the avoidance and recovery of payments made by the debtors, who are S-corporations, to satisfy their owners' tax liabilities that accrued on their portion of the corporation's case. The first were made in the two years preceding bankruptcy, and Section 548 of the Bankruptcy Code gives the trustee a cause of action to avoid those payments as fraudulent transfers, and we are not appealing the district court's judgment as to that group. But the second group of payments were made in the two to four year period prior to bankruptcy, and trustees sought to avoid these tax payments under Section 544B of the Bankruptcy Code. But the trustee has not proven one of the required elements of a Section 544B claim. What we'll refer to is the actual creditor requirement, and that is the focus of the government's appeal. Section 544B says... Does the requirement be the actual creditor or stand in the shoes of the creditor? So the requirement is that the trustee must point to an actual unsecured creditor of the debtor that could have avoided a transfer if no bankruptcy petition had been filed. That is the triggering creditor requirement that is a necessary element. That's the statutory language? The exact statutory language is voidable under applicable law by an unsecured creditor of the debtor. But the case law, I mean, that's not a... Which case characterizes the burden as you just articulated it? Which Ninth Circuit case describes it that way? Well, I don't know if there's a Ninth Circuit case. I'm not... I wasn't quoting from a Ninth Circuit case, but I mean, I was actually... I just think you put a little extra gloss on that. Well, I'm not sure. I mean, I actually pulled that language from my opponent's brief. It is if no bankruptcy petition had been filed outside of bankruptcy. Bankruptcy law does not provide the substantive basis. Could you explain one thing to me that I just really don't... I'm not a bankruptcy expert and I haven't mastered the bankruptcy code like so many of the lawyers that have raised these cases. But as I It provides a cause of action to avoid a transfer outside the two-year period, 42. But it's based on state law, right? In other words, it's not a state law cause of action. It's a 544B cause of action that's sort of based on or incorporates state law. I think so. It's definitely a federal cause of action because it is granted to the trustee in bankruptcy court. State law doesn't provide for a trustee to sue in this circumstance. It's federal law that provides that. So federal law does provide the requirement, the power. And that could have avoided the transfer outside of bankruptcy. Now, does that mean, and this is the key, I guess, as we've been hearing throughout the week, the million-dollar question, does that mean that he also has to show that it's recoverable? So recoverable is a different statute. Once the trustees has exercised an avoidance power under 544, then you look to 550, Section 550, which provides the extent to which the amount is recoverable. And I actually do have, so I can point to the Ninth Circuit case that states the exact language about that, about the interplay between those two sections. And maybe this will help clear up. This is a 2006 case, In Re Asequia. Oh, I'm sorry, it's a 1994 case. In Re Asequia. And it says, after demonstrating the right to recover conveyances under Section 544B, a trustee must then establish the amount of recovery under 550A. And so that's how the interplay works. Effectively, it later goes on to say there's three things that the trustee must establish. Fraud or illegality under the applicable substantive law. Number two, resulting voidness or voidability of the transfer under the applicable law so as to allow avoidance pursuant to 544B. And that's really where the meat of it, of this case is, is would this be voidable under the applicable law? Why isn't it voidable under the applicable law? That's what I don't understand. I mean, your argument and the Seventh Circuit argument says, well, it's not sovereign immunity. They also didn't waive it as to the state law cause of action or the state law basis. Yeah. Under no circumstances can an Idaho resident, for instance, go into court and say, I'm going to recover a tax payment made in fraud of me under the Idaho Fraudulent Conveyance Act. Or even to say, I'm going to avoid against the United States a transfer of a tax payment. That's not available to creditors outside of bankruptcy. And there are many reasons for that. One of which is that we would, the government would be immune from such a suit. Another reason is basic supremacy clause principles. It's well understood that in the area of Federal tax collection and receipt of payments, that that's an area that the Federal government has intended to occupy the full field and doesn't want, isn't going to permit a state to adopt its own laws about when a tax payment can be avoidable. But what was Congress up to when it adopted the 106? I can't remember the exact. So 106. I mean, they're pretty clear waiving sovereign immunity for claims under 544. Absolutely. They are absolutely clear. You just told me a few minutes ago that this was a claim under 544. Right. They have waived sovereign immunity for a trustee's claim under 544. We're not disputing that. The making of a claim. What's that? The making of a claim. Right. The substantive elements of the claim must still be established. But in order to recover. In order, in order to avoid the payment. You have to, you have to prove the substantive elements. But in terms of the trustee's right to come into court and it's, it's been waived. This is not, we're not disputing the meaning of section 106. 106 waives sovereign immunity for a 544 action. Absolute. The question in this case is whether or not the elements of 544B have been met. And one of the elements is not to show that the trustee could bring a claim. One of the elements is to show that outside of bankruptcy, an actual creditor could have done this. But ultimately you're still backed into bankruptcy. Well, it's a. Because he gets his authority under 544B. Correct. He has the authority to bring this claim. He just didn't make it. See, the whole point of 544B is to say, look, if out, if, if no bankruptcy petition had been filed, this one creditor would have the right to avoid a payment. Why is it that now that bankruptcy has been filed, that he shouldn't share that valuable right with the rest of the creditors? Bankruptcy is not going to, going to, going to recognize that preferential treatment of the one creditor with the avoiding power. So we're going to give it to the trustee. And we're going to allow that right to be shared among all creditors. But there's no such right here. There's no such right outside of bankruptcy to be shared among all the creditors. What substantive law provides the element that it must be an actual creditor, the actual creditor requirement? The substantive law is, is the actual, requirement is in section 544B. It's not the Idaho or Washington law? Correct. Idaho or Washington law provides, is the non-bankruptcy law under which you would show that an actual creditor could have brought the claim. Okay. But the requirement that it be an waiver of sovereign immunity, Congress waived sovereign immunity for a suit where there was an actual creditor, not for a suit where there might have been an actual creditor, had Congress waived immunity with respect to Idaho law. It's, the waiver is only to the extent that the trustee can prove an actual creditor. You know, every time I go back to those texts of the statute, it says, or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502, or that is not allowable only under section 502E. I mean. Correct. These transfers are not voidable under applicable non-bankruptcy law. Well, they don't. As against the United States. As I was going to say, don't they meet all the other criteria for voidability? In this case. It's only the fact that you have the government. Well, they were hotly contested, but in this case, it is only because we're a government. Right. Or a State or a Tribal authority. You know, it bothers me with your argument, and I found this somewhat concerning with the Seventh Circuit's cases. You're saying that when Congress passed 106, that they had to, and they applied it to 544B, that they had to go one step further in saying, yeah, and then we mean sovereign immunity also, but sovereign immunity still applies under, in the, when you're looking at the State law. Well, it's a, I mean, it's which is, it incorporates this whole body of non-bankruptcy law. And under, but under non-bankruptcy law, there's no, you can't avoid transfers against the United States. So the waiver of sovereign immunity then has to be understood to mean that we're only waiving with respect to what already could have been done. And that's, I mean. But why would they clarity 544B, you know, when they knew at the time what the law under State law is, that you can't avoid a claim under, against the Feds? So Congress didn't say 544B. They just said Section 544. Well, it encompasses 544B. I mean, there's no question about it. They, they basically, they wanted to fix what happened in Nordic Village. Nordic Village says, no, the waiver of sovereign immunity is too, too vague to encompass all these bankruptcy actions. Well, for 16 years, everyone had been proceeding like, no, that was fine. You could go after the government in, in, in certain cases. Nobody was going after the government under State law theories in, in 544B. So the fix was, let's go through and find every point in which the And so, you know, they're waiving immunity with respect to those actions for sure. They're waiving immunity with respect to a 544B action if you can prove that it's available under non-bankruptcy law. And it is in some circumstances. There are State waivers of sovereign immunity. There are, I mean, there's nothing really that stops the federal government from. Is there a different policy consideration when it comes to 544B? A different than. Policy than, than 544A. It, it is. I mean, 544B is, is a different kind of statute. So. It just extends the statute of limitations, that's all. Well, so no, 544B doesn't say anything about the statute of limitations. Well, it allows you to go back four years. No, 544B doesn't say that. That's the State law. That's one of the problems, is that if you interpret 544B to permit State law causes of action against the United States, where you couldn't bring that action outside of bankruptcy, then you're subjecting the United States to a variety of different, you know, four, six, even, maybe even 10-year limitations periods where we're disgorging 10-year-old tax payments. Counsel, at the outset, you said you wanted to save some time for a rebuttal. I, I do, and I, I appreciate that. If, if no one else has any hot questions, I will. When you get back up, maybe you want to address whether the Ear, Seventh Circuit case requires more than the Supreme Court did in Meyer. Okay, thank you. Okay, for Plaintiff, you can lower that podium if you'd like. There's a switch. Just a bit, that's better. Plaintiff appellees cross-appellant, how's that? Good morning, may it please the Court. My name is Jennifer Radel, here today on behalf of James Trust. What the government asks this Court to do is to overturn the District Court's judgment against it and allow the United States to keep out of the reach of the defrauded investors here millions in admitted fraudulent transfers. Doug Swenson defrauded over 10,000 investors, many of whom lost their retirement savings, and the government has convicted Mr. Swenson and three other insiders on multiple counts of wire and securities fraud. There's no dispute here that the $17 million at issue was investors' money paid to the IRS with the intent to defraud creditors and for the sole benefit of Mr. Swenson. In other words, the government does not dispute that the trustee has established the elements of voidable transfers. The only question is whether the United States should be treated differently than any other recipient of an intentional fraudulent transfer. Both the District Court and the Bankruptcy Court below held the answer to that question is no. Section 106A of the Bankruptcy Code means precisely what it says. Federal sovereign immunity is abrogated and cannot be raised as a defense to a claim under 544 or 550. So the Seventh Circuit rejected that argument? The Seventh Circuit rejected that argument. Where did they go wrong? To be perfectly honest, they went wrong at every turn, Your Honor. There are three fundamental errors that the Court made, and I think you've touched upon each of them in the argument with the government. The first is that EAR cited FDIC versus Myers and said there's a two-step inquiry. Is there a waiver of sovereign immunity and is there a substantive cause of action? And those two questions have to be separate. But what EAR ignored is that the Supreme Court has also held in Mitchell and White Mountain Apache Tribe that that second question can't be answered by reference to the government's federal sovereign immunity. The government does not dispute that there's an abrogation here, and so they cannot rely upon sovereign immunity and call it a substantive element of the trustee's claim. The second big error is ignoring the distinction between avoidance and recovery, which you discussed at length with the United States Attorney. I think if we go back to the EAR opinion, we cited some examples in our brief, but it says very clearly that the EAR got that wrong. They say things like, because no unsecured creditor could obtain relief against the United States using the Illinois UFTA, EAR's tax payment is not voidable under applicable law. They seem to incorporate immunity as an element of the cause of action. They incorporate immunity as an element or a defense available under state law. But once Congress abrogates it in Section 106A, the question is no longer whether the United States would be liable in a state court action outside of bankruptcy. The question is, once we treat the United States like every other private party who received a fraudulent transfer, would a private party be liable? And the answer to that question is undeniably yes. Do you think that's what Congress is trying to achieve when they waive sovereign immunity under 106? Undoubtedly. By including Section 544 and 550 in the scope of the abrogation in 106, Congress determined that fair is fair. The United States is permitted to assert claims against an estate as a claimant. And because it's permitted to do so, it's only right that when the United States receives assets wrongfully diverted from the estate, it should be liable to the same extent as private parties. Counsel, if I could ask you a question on the real-world impacts here. And I'll let Mr. Dale comment also on his rebuttal. But from your client's point of view, my understanding is if they don't get this money back through this action, there's less money to pay the defrauded creditors. Yes, $17 million less. Now, on the other side of the policy impact scale, what happens to the government if they have to give this money back? Do they have any other party they can collect their taxes from? They do have a party to collect their taxes from. They have Doug Swenson, who was the taxpayer here. The DBSI entities were not liable for these taxes, which was the fundamental reason that these payments are avoidable as a matter of law in the first place. They can assert a tax claim against Doug Swenson, who should have been the payor in the first instance. Congress has thought carefully about how to treat the IRS and tax claims within the context of bankruptcy. And in many instances, it has provided special treatment to the IRS. There are instances in which it's given priority over other certain unsecured claims. There are special discharge provisions. But fraudulent transfers is simply not one of those areas that Congress has determined to treat the IRS differently. Quite to the contrary, as Judge Paius mentioned, in 106, by including all of the avoidance provisions and the recovery provisions in the code, Congress has expressly determined that the United States should be liable, just like everyone else, and not be provided special treatment. If I could, I'd like to talk about the question that the United States focuses on, which is that there's no one, no creditor outside of bankruptcy who could have avoided these transfers. We pose a hypothetical in our brief, in our opposition brief, that I think illustrates how these payments could have been avoided outside of bankruptcy. And once that question is answered in the affirmative, the elements of Section 544B are met. If we assume the same basic facts as we have here, which are a debtor makes payments on behalf of a third party not liable to the IRS with the express intent to defraud their creditors, and the debtor receives no value, the only difference being that debtor doesn't file for bankruptcy. The question is, could a creditor outside of bankruptcy seek to avoid those tax payments and name only, as the only defendant, Mr. Swenson, who's the person for whose benefit the transfer was made? Under the UFTA in Idaho and elsewhere, a person for whose benefit transfer was made is on equal footing with the initial transferee and is liable for that transfer. There's no doubt that that action could proceed against Doug Swenson. That transfer would be avoidable. Your recovery judgment outside of bankruptcy would be only against Doug Swenson. What 106 and 550 does is allow me to name the United States in bankruptcy court, but there's no doubt that that transfer is avoidable in state court. The only reason the United States offers that that action could not persist in the manner that I've suggested is that the United States as an initial transferee would be a necessary party. I don't think that the United States or the initial transferee is a necessary party, dependent upon the facts. And whereas here we have facts that the asset is money, which is fungible, and you're not seeking any relief against the initial transferee, I don't think that elements of Rule 19A are met. There's at least one case cited in our brief in Ray Groob, which holds precisely that, which is that an initial transferee is not a necessary party. But besides that, more importantly, when the United States argues that it would be a necessary party, it's ignoring the most important part of Rule 19. There's no suggestion that the initial transferee or the United States in that hypothetical state court action would be an indispensable party. And that's what would prevent that hypothetical state court action from proceeding without the United States. Let me see, do you have to follow the path that you just outlined there in order to affirm the district court? No, I don't think so, Your Honor. I think that you could find alone that EAR in the United States analysis runs afoul of United States versus Mitchell, and that even looking to whether or not there would be immunity in a state court action is more than is required for, to give full effect to Section 106A. I think that you could read Section 544B, pursuant to its plain language. It says that the transfer has to be voidable by a creditor. It doesn't say voidable as against a particular defendant. Or we can look at Section 106A as many of the other provisions of the code. Section 544B, as the court recognized, allows a trustee to stand in the shoes of a triggering creditor. But it's a federal cause of action, and the trustee's rights are not completely coextensive with a state court creditor's rights in bankruptcy. And there are examples of that. Section 546 extends the trustee's statute of limitations. So a trustee can bring a claim under Section 544B, even though at the time he brings that claim, there's no longer a state court creditor who could. It's also well-recognized under 550 Moore versus Bay, In re Asakia, that the trustee's rights to avoid and recover are broader than the state court creditor could avoid. I can avoid the entire transfer, even though a state court creditor could only avoid a portion based upon the nature of his claim. Section 106A operates exactly the same. The question is not, is there a state court, would there be a defense in state court? The question is, would there be a defense in state court that's consistent with the bankruptcy code? In other words, can the United States rely upon a defense the code has expressly abrogated? It can't rely upon the statute of limitations if 546 applies. It can't rely upon the limited nature of a creditor's right to recovery under state law because of 550 and how that's been interpreted. And the same is true with respect to 106. It can't rely upon the sovereign immunity defense in light of section 106. I don't want you to miss out talking about your other issue. My cross appeal. Yeah. If there are no other burning questions, I can turn to that. I would just like to make a quick note that the United States concern about being subject to varied laws of the states is really not something that's unique to section 544B. It's, there are lots of provisions of the code that refer to state law and the United States rights are dependent upon those. So turning to the cross appeal. After finding that these transfers were voidable as a matter of law, the district court erred in excluding approximately $3.6 million from the trustee's recovery by adopting an 11th circuit ruling that held the IRS acts like a bank when it receives tax payments and is therefore a mere conduit as to monies refunded to the insiders. I wish that were the case. Don't we all? Take my, just take my, what do you call it? What are the cards? Your ATM card? Your ATM card. That 11th circuit ruling is distinguishable both on the law and the facts. On the law, the 11th circuit standard has been emphatically rejected by this court. Under the 9th circuit's dominion standard, the IRS exercises dominion at the time it accepts a tax payment. It obtains legal title and it has the unfettered use of that money in the treasury. The IRS... Once a taxpayer though files a request for a refund, is it obligated to refund the money? The IRS is obligated to issue a refund if the IRS deems it appropriate, if it's within a particular time frame. There are hoops that the taxpayer has to jump through. Again, unlike a bank. And those sorts of hoops or restrictions in the IRS's obligation to make a refund, if those requirements are met, are not unlike the restrictions that this court held in In Re Income Net did not deprive that entity of dominion. And the United States cites no case in the 9th circuit or otherwise that once it exercises dominion when it receives those payments, that events well after the transfer, like the request for a refund, can change whether or not there's dominion at the time of the transfer. The United States argument is primarily that it would be unfair because it has already refunded some of these transfers to the insiders. But that's really a policy decision that's already been made by Congress in Section 550. Section 550 expressly contemplates that an initial transferee, here the IRS, remains fully liable for the full value of a transfer, even if it has subsequently departed with the asset and there's a subsequent transferee. The IRS is in a very similar position here. The purpose of Section 550 is to restore the estate to the position it would have been without the transfer. And the IRS's refunds to the insiders did nothing to put the estate back into the position. The debtors made these tax payments on behalf of the insiders, but the IRS made the refunds to the insiders themselves. But even under the 11th circuit standard, under any standard, a transferee who receives a payment in satisfaction of a debt is by definition not a mere conduit. And the majority of the transfers here were issued and requested well after the IRS assessed a tax liability. The IRS provides no legal basis to find that any of the refunds, even if they were obligated to make them, that were issued months and in some instances years after the assessment of a tax liability could ever be anything other than payments on a debt. The United States doesn't address that issue at all in their reply brief. And I think that there's no dispute that when the IRS assesses a tax liability, that it considers it to be a debt. I would, I think, just like to conclude by saying, with the observation that the court made in Ray Mortgage Store. And that is, in every fraudulent transfer case within a bankruptcy, someone's going to be hurt. It's either the recipients of the fraudulent transfer or it's the creditors. And Congress has determined that as between creditors and recipients of fraudulent transfers, it's the recipients of fraudulent transfers who should bear the burden. There's really no better example of that than this case. Congress, in Section 106, 544 and 550, determined that as between the United States, which received admitted intentional fraudulent transfers, and the defrauded investors here, it's the United States that should bear the burden. And the trustee asks that the court affirm the district court's judgment, but amend it insofar as it excluded the 3.6 from the trustee's recovery. If there are no further questions, we rely on our briefs. Thank you, counsel. Any questions? Mr. Dale, thank you. Thank you. So there's a lot to cover in a short period of time. I know that there were a couple of open questions at the end. I guess I'll start with that. FDIC versus Meyer. So FDIC versus Meyer says that it was interpreting Section 1346B, 28 U.S.C. 1346B, and that waives immunity where, among other things, the United States, if a private person, would be liable to the claimant under state law. That's roughly analogous to what we have here, where there's a reference to state law, a waiver of sovereign immunity to a circumstance that would be available under state law. The court held that the substantive requirements of that derivative aspect of the statute had not been met because it was a constitutional claim that would not have been available under state law. Then U.S. Postal Service v. Flamingo Industries, and that's 540 U.S. 736, applied that Meyer two-part test and found no intent to make the United States Postal Service an antitrust defendant, notwithstanding a very broad sue-and-be-sued clause. The Supreme Court has now twice taken us through this two-part test where there's a waiver of sovereign immunity with respect to one statute that incorporates other law. Well, you have to go to the other law. In this case, the other law is Idaho law, and these remedies are not available. You can't avoid a transfer to the United States under Idaho law, and therefore the waiver does not extend to, you know, it only extends to the elements of the statute that the trustee in this case has not proven. You know, there was the proposition raised about suing the insiders whose fraud was sort of responsible for all of this mess and how you could avoid the payment as to them and then recover from the United States. That's not how avoidance actions work. When you avoid an action, when you avoid a transfer, you are stripping the defendant of any rights with respect to that transfer or subordinating that defendant's rights to the creditor. You have to do that against the United States in order to obtain recovery of a tax payment. So the United States would have to be a defendant to an action to avoid a tax payment as to us. Now, you can avoid Swenson's rights to the payment without bringing the United States in and then recover from Swenson. In fact, that's what we think the trustee should have done. But they're not going after the fraudsters. They're going after the United States. We have an unlimited fisk. That's where the money is. That's where the money is. So I do want to say something quickly about the cross appeal. So if the court determines that the government is correct in its appeal that the trustee does not have to satisfy the triggering creditor requirement of Section 544B, then it doesn't have to decide the trustee's cross appeal. But assuming that the actual creditor requirement is to be determined without regard to defenses available to government units outside of bankruptcy, then the government should not be the transferee of tax overpayments that it was obligated to and did refund to the taxpayer. The salient point is that the government didn't have any discretion to retain the overpayments. I mean, I think my colleague said that the IRS, you know, refunds when it considers it appropriate. That's not how it works. We're ordered to refund payments all the time. If there is an overpayment, the IRS is obligated to refund them. And that's why it's different than the Ninth Circuit case where it was clear in that case that that was because the administrator of that fund had discretion over if and when to make distributions. The government didn't have any discretion here. And I just want to say that this actually brings in a lot of, I mean, people overpay loans. They overpay all kinds of things all the time. This is a problem not unique to the United States. This is the problem of overpayments. The recipient doesn't get any benefit for the payment because, you know, it got the funds, but it's obligated by contractor law to reimburse the funds to the extent that it later on turns out that the liability wasn't. Is there an obligation to check to make sure there's an overpayment? Just because a taxpayer says there's an overpayment, the government has to write a check for the amount of that? We don't audit everybody, no. No, no, I mean, you know. Most of these transactions are automated. I mean, we get millions of payments a week. We're supposed to check each and every one. No, no, but I'm saying that theoretically they could. The IRS would be larger than the rest of the federal government in that circumstance. No, I guess, well. So, anyway, I see that I'm out of time. I mean, my only point was that they could. They could. I mean, suppose, you know, it's not every taxpayer. I don't know, maybe there are a lot of taxpayers that when they ask for an overfund, they ask for $3 million. I mean, how many taxpayers ask for a $3 million overfund payment? Well, when their liability was, you know, some $14 million, that's actually not a, that doesn't raise any alarm bells. I don't think. That kind of, you know. Some people live in a different world than we do. I understand. So, anyway, you know, I'll just summarize by saying the only circuit court precedent on both of these issues is in our favor, and so we ask that this court vacate and remand the case with instructions to enter a judgment in accordance with the Seventh Circuit's decision in the EAR. Thank you. Thank you very much. We thank both counsel for their very high quality arguments. Also, thank you for traveling the distance to help us today. So, with that, the court will adjourn.
judges: Hawkins, Gould, Paez